UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM CLINTON MITCHELL,<br><br>Defendant. | Case No. 2:21-cr-00205-RFB-VCF<br><br>**ORDER** |

**I.     INTRODUCTION**

Before the Court is Defendant William Clinton Mitchell's Motion to Suppress. ECF No. 20. The Court held an evidentiary hearing on this Motion on July 27, 2022, and August 8, 2022. For the reasons stated below, the Court denies the Motion to Suppress.

**II.    FACTUAL FINDINGS**

The Court makes the following factual findings based upon consideration of the evidence submitted at the evidentiary hearing in this case.

On March 19, 2019, Mitchell was adjudicated guilty of Ownership or Possession of a Firearm by a Prohibited Person in the Eighth Judicial District Court for Clark County Nevada in case number C-18-335129. On March 22, 2019, Mitchell was adjudicated guilty of Burglary in the Eighth Judicial District Court for Clark County, Nevada in case number C-18-335136. For both felony offenses, Mitchell was sentenced to a minimum of 24 months and a maximum of 72 months imprisonment. These sentences were suspended, however, and Mitchell was instead placed on probation for a period of up to five years. Mitchell entered into probation agreements in both cases, which included nearly identical terms and conditions, on March 15, 2019 and April 3, 2019, respectively. Mitchell's probation agreements contained a search clause which reads:

> You shall submit your person, place of residence, vehicle or areas under your control to search including electronic surveillance or monitoring of your location, at any time, with or without a search warrant or warrant of arrest, for evidence of a crime or violation of probation by the Division of Parole and Probation or its agent.

The first special condition of Mitchell's probation was that he enter and complete the Desert Behavioral Therapy Detox Center Program. Following that program and release from custody, Mitchell was required to enter and complete the six-month Salvation Army inpatient treatment program. On May 2, 2019, Mitchell was transported to the Salvation Army inpatient program. Mitchell was discharged from the program on July 16, 2019, for admitting that he used a controlled substance while he was out on his family pass. Mitchell then resided at Freedom House, a sober living facility, but was discharged on August 6, 2019, because Mitchell had controlled substances and drug paraphernalia on the Freedom House's property. Mitchell was permitted to return to the Salvation Army on August 16, 2019.

On August 21, 2019, Mitchell was discharged again from the Salvation Army for admitting that he had used controlled substances while there. Mitchell then failed to report as required to his probation officer and his whereabouts were unknown causing the probation office to place him in absconder status. Because of Mitchell's violations and absconder status, bench warrants were issued for his arrest on September 3, 2019 and October 7, 2019, respectively.

On July 7, 2020, an additional warrant was issued for his arrest for two counts of Assault with a Deadly Weapon in Las Vegas Justice Court in case number 20-CR-008457.2. On October 15, 2020, members of the Federal Bureau of Investigation's ("FBI") Criminal Apprehension Team ("CAT") attempted to locate and apprehend Mitchell pursuant to his warrants. That morning, at approximately 10:30am, Nevada Department of Public Safety Probation Officer, Eric Chandler, who was assigned as a Task Force Officer ("TFO") with the CAT team, conducted surveillance at 4669 Belshire Drive, Las Vegas, Nevada (the "Belshire Drive" address). The Belshire Drive address is where Mitchell's mother resides.

TFO Chandler had other information associating Mitchell with the Belshire Drive address. Specifically, TFO Chandler knew that Mitchell had resided at this address based on Mitchell's

prior parole conditions from his conviction of Possession of a Firearm with Altered or Obliterated Serial Number in the Eighth Judicial District Court for Clark County in case number C-15-310717. In addition, TFO Chandler knew that Mitchell had recently listed the Belshire Drive address as his residence with state Department of Motor Vehicles ("DMV") based on a review of Mitchell's driver's license, issued on June 11, 2020, which listed 4669 Belshire Drive as Mitchell's residence. During surveillance, TFO Chandler observed Mitchell in the attached garage of the residence. TFO Chandler also observed a Maroon Ford Explorer parked in the driveway. This vehicle was also registered to Mitchell at the 4669 Belshire Drive residence. TFO Chandler then left and returned with additional CAT members to effectuate Mitchell's arrest. At approximately 1:00pm, while conducting surveillance of 4669 Belshire Drive, CAT members observed Mitchell drive up to the residence in a white Toyota Corolla. After approximately ten minutes Mitchell exited the vehicle and again entered the residence through the garage. Law enforcement then surrounded the residence in order to have Mitchell exit. Mitchell did not comply and exited through a bedroom window to the rear of the residence and began jumping walls to escape arrest. Mitchell ran through several yards before he was eventually apprehended.

During the search of Mitchell incident to arrest, TFO Chandler located 1.3 gross grams of suspected methamphetamine on his person.

While TFO Chandler and some members of the CAT team apprehended Mitchell, other members conducted a safety sweep of the residence. The only individuals later confirmed to be at the residence were Mitchell, his girlfriend, and their infant child. The owner of the residence, Mitchell's mother, was not present. During a search of the garage area where Mitchell had been observed by TFO Chandler and other members of the CAT team, TFO Chandler located a Beretta APX 9mm firearm with serial number A021408X wrapped in camouflage fabric in a cabinet. That firearm was later submitted for DNA analysis, which concluded that Mitchell's DNA was present on the firearm.

### III. LEGAL STANDARD

The Fourth Amendment protects the right of the people to be secure in their persons against

unreasonable searches and seizures by the government. U.S. Const. amend. IV. A warrantless search is per se unreasonable under the Fourth Amendment, subject to only a "few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967). Since the Fourth Amendment protects people not places, the "capacity to claim the protection of the Fourth Amendment depends … upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." Minnesota v. Olson, 495 U.S. 91, 95 (1990).

In order to have "standing" or "capacity" to contest the legality of a search or seizure, a defendant must "demonstrate that [he has] a legitimate expectation of privacy in the items seized or the area searched." United States v. Parks, 285 F.3d 1133, 1141 (9th Cir. 2002). "A defendant makes this demonstration by establishing a subjective expectation of privacy in the area searched, that is, one that society would recognize as objectively reasonable." Id. The defendant, if he has standing, then bears "the burden of establishing, under the totality of the circumstances, [that] the search or seizure violated his legitimate expectation of privacy in a particular place." United States v. Davis, 932 F.2d 752, 756 (9th Cir. 1991).

Warrantless searches of probationers' residences are permissible under the Fourth Amendment when they are authorized by a condition of probation and supported by reasonable suspicion of criminal activity. United States v. Knights, 534 U.S. 112, 121-22 (2001); United States v. Lopez, 474 F.3d 1208, 1212-14 (9th Cir. 2007). The Ninth Circuit has further clarified that to conduct a warrantless probation search, law enforcement "must also have probable cause to believe that the probationer actually lives at the residence to be searched." United States v. Mayer, 560 F.3d 948, 957 (9th Cir. 2009). Probable cause as to a residence exists if an officer of "reasonable caution" would believe, "based on the totality of [the] circumstances," that the parolee lives at a particular residence. United States v. Diaz, 491 F.3d 1074, 1077-78; United States v. Howard, 447 F.3d 1257, 1262 (9th Cir. 2006). This is a "relatively stringent" standard, which requires more than "a mere well-founded suspicion." United States v. Franklin, 603 F.3d 652, 656 (9th Cir. 2010); Howard, 447 F.3d at 1262.

In determining whether there is probable cause to believe that a probationer resides at a

particular address, district courts are instructed to consider a non-exhaustive list of factors, including whether: (1) "the parolee did not appear to be residing at any address other than the one searched"; (2) "the officers had directly observed something that gave them good reason to suspect that the parolee was using his unreported residence as his home base"; (3) "the parolee had a key to the residence in question"; and (4) "either the parolee's co-residence or the parolee himself identified the residence in question as that of the parolee." Howard, 447 F.3d at 1265-66. These factors should be considered in totality and not in an isolated manner. Id.

### IV. DISCUSSION

The Court finds that the police in this case had probable cause to believe that Mitchell resided at the address that was searched. As the Court finds that the police had probable cause to believe that the searched residence was that of Mitchell, the Court finds it unnecessary to address the issue of standing.

The Court finds that police officers, including TFO Chandler, had sufficient information to believe, based on the totality of this information, that the Belshire Drive address was Mitchell's residence. First, the most current information provided by Mitchell himself to state officials identified the Belshire Drive address. That is, Mitchell had recently voluntarily and intentionally confirmed to the DMV that the Belshire Drive address was his residence. Second, the Court finds that the Belshire Drive address was the only residential address that Mitchell had ever identified to state probation officials. While Mitchell had temporarily lived at sober living or drug treatment facilities, these locations could not be considered a "residence." Indeed, nothing in the record suggests that Mitchell intended to live at these locations beyond what would have been required for completion of his treatment. Third, officers observed Mitchell actually at the Belshire Drive residence. He was observed not only at the residence, but his vehicle which was registered to the Belshire Drive address was also parked in the driveway at the address. Fourth, the Court considers the fact that the officers knew that Mitchell was paroled, in June 2017, to the Belshire Drive address, and that he was supervised at that address until April 2018 when he was arrested on other charges. This means that the officers had information establishing an extended relationship with

this address as Mitchell's residence—and no other address. Finally, the officers observed him moving belongings in and out of this address suggesting that he was storing or keeping his belongings at this this address. Considering all of these factors collectively, the Court finds that officers had probable cause to believe that the Belshire Drive address was Mitchell's residence. See Mayer, 560 F.3d at 957.

The Court disagrees with the Defendant that his arrest and incarceration in Alabama undermines or negates the probable cause to believe that the Belshire Drive address was his residence. Mitchell was arrested in December 2019 for fleeing from police in a stolen vehicle, and he was released in February 2020—four months before he confirmed to Nevada DMV that his current residence was the Belshire Drive address. An arrest does not establish residence. Mitchell's presence in Alabama without more does not suggest that he intended to establish his residence in Alabama. The Court thus rejects this information as somehow indicative of an Alabama residency or a negation of his Nevada residency at the Belshire Drive address.

The Court also rejects Defendant's argument that the officers should have considered the possibility that Mitchell was homeless at the time of this search, and therefore the Belshire Drive address could not reasonably be his residential address. Defendant conflates being an absconder with being homeless. The mere fact that an individual is an absconder for not reporting, as required, to their respective reporting officer does not mean they are homeless. A person can be homeless and not be an absconder. Likewise, a person can be an absconder and still have a home or residence. Evading detection at one's home or residence does not necessarily make it less one's home or residence. In the instant case, the Court finds that Mitchell has not established that he ever told anyone, including the probation officer, that he was homeless. Nor did he indicate to any probation officer that he had a residence other than the house at the Belshire Drive address. The notion that he was homeless, rather than simply being an absconder, is purely speculative and must thus be rejected.

For all of the above reasons, the Court finds that the police had probable cause to believe that the Belshire Drive address was the residence of the Defendant.

Finally, the Court finds that the search clause in the respective parole documents provided

officers with a legal basis to search the garage, as it was part of his residence and he had been seen moving items in and through the garage. See Lopez, 474 F.3d at 1212-14.

V.   **CONCLUSION**

**IT IS HEREBY ORDERED** that the Motion to Suppress [ECF No. 20] is DENIED.


**DATED:**  July 12, 2023.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**